NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER
California Bar No. 222875
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3172
    Facsimile:  (213) 894-0142
    E-mail: Katie.Schonbachler@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | No. 2:20-CV-10712 |
|---|---|
| Plaintiff, | <u>VERIFIED COMPLAINT FOR</u> <u>FORFEITURE</u> |
| v. | |
| $38,905.00 IN U.S. CURRENCY, | 21 U.S.C. § 881(a)(6) |
| Defendant. | [D.E.A.] |

        Plaintiff United States of America brings this claim against defendant $38,905.00 in U.S. Currency, and alleges as follows:

///

**JURISDICTION AND VENUE**

1.      The government brings this in rem forfeiture action pursuant to 21 U.S.C. § 881(a)(6).

2.      This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.      Venue lies in this district pursuant to 28 U.S.C. § 1395.

**PERSONS AND ENTITIES**

4.      The plaintiff in this action is the United States of America.

5.      The defendant is $38,905.00 in U.S. Currency (the "defendant currency") seized by law enforcement officers on or about December 2, 2019 from Jarquis Traonne Moss ("Moss") at Los Angeles International Airport ("LAX"), which is located at 1 World Way, Los Angeles, California 90045.

6.      The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7.      The interests of Moss may be adversely affected by these proceedings.

**BASIS FOR FORFEITURE**

8.      On December 2, 2019, law enforcement officers assigned to a LAX narcotics task force, which task force is known as DEA/LAX Group 3 and is comprised of special agents from the Drug Enforcement Administration, deputies from the Los Angeles Sheriff's Department and police officers from the Los Angeles Police Department, encountered Moss at the LAX airport. Moss was traveling alone on American Airlines flight number 2328 from Atlanta, Georgia to Los Angeles, California.

9.      Moss was traveling on a one-way ticket that was purchased three days prior to his travel. Narcotic money couriers typically purchase one-way tickets a short time before their departure, because their schedules are often dependent on co-conspirators in the drug source cities such as Los Angeles and they also often believe that doing so will limit their exposure in airline databases and avoid police detection. Those narcotic

2

money couriers often have no prior knowledge of when the drugs will be available, so they must purchase last minute airline tickets when the controlled substances become accessible. Atlanta is known as a consumer city for controlled substances, and Los Angeles is known as a source city for the purchase of controlled substances.

10.    Officers approached Moss as Moss was walking towards the exit at Terminal 4, explained that Moss had done nothing wrong and was not being detained or under arrest, and asked whether Moss would speak with them about his travel to Los Angeles, to which Moss agreed. An officer asked Moss for identification. When Moss handed the officer his identification, Moss' hand was visibly shaking.

11.    The officer asked Moss what Moss' purpose was for traveling to Los Angeles, to which Moss became visibly nervous and replied that he had traveled to Los Angeles to attend a car auction and buy cars for his business.

12.    The officer asked Moss if he was travelling with any contraband, drugs, or large sums of money. Moss told the officer he was not traveling with any contraband or drugs, but stated he had $8,000.00 in U.S. currency in his backpack. Moss then recanted his story and said that he was in possession of approximately $9,000.00 to $10,000.00 in U.S. currency. The officer asked Moss if the officer could search his backpack. Moss consented to a search and removed his backpack from his shoulders and handed it to the officer. During the search of Moss' backpack, the officer discovered a large stack of U.S. currency in the pocket of a red pair of sweatpants. The officer immediately zipped up the backpack and handed it over to Moss. When the officer asked Moss if the money in his possession belonged to him, Moss replied "yes."

13.    When the officer asked about his travel, Moss told the officer that he had purchased a one-way ticket three days prior to his flight. When asked about his travel plans, Moss stated that he planned to stay in Los Angeles for about a week and later altered his statement and said "for only a few days." The officer then asked Moss if he had made any lodging or rental car arrangements. Moss stated that he had not made rental car arrangements and that he intended to "get a hotel right next to the airport."

Moss asked the officer if the officer could recommend a good hotel next to the airport.

14.     The officer asked Moss if he would accompany the officer to the DEA/LAX Group 3 office to discuss the origin and purpose of Moss' possession of a substantial amount of U.S. currency.  Moss consented and walked to the office while carrying his own luggage.

15.     The officer asked if Moss would place everything from his pockets on top of the table in the interview room.  Moss removed a folded over bundle of U.S. currency from his pants pocket and a cell phone.  Then, the officer asked Moss if he could search his backpack again, and Moss consented.  During the search of the backpack, the officer found U.S. currency in the pocket of a pair of red sweatpants and an old style flip cell phone.  Persons involved in narcotic trafficking typically carry inexpensive, disposable secondary cell phones that they use exclusively for illicit communication in the belief that it is less likely to be detected by law enforcement.  The officers again asked Moss how much money he had in his possession, and Moss now claimed he had approximately $15,000.00 in U.S. currency.  In response to the officers' inquiry as to whether all the money in his possession belonged to him, Moss replied affirmatively.  Narcotic money couriers commonly place controlled substance related proceeds inside the front pocket of a clothing article as well as carry the proceeds on their person.

16.     Moss further stated that he traveled to Los Angeles to possibly purchase several vehicles at an auction in Anaheim, California and intended then to ship them back to Georgia to resell them for a profit.  Moss intermittently mentioned that he owned a car dealership and tow service in Montgomery, Alabama.  Moss went on to say that it would cost him $1,000.00 per vehicle to ship the vehicles back to Alabama.  When asked how many vehicles he intended to purchase, Moss said "five or six."  In response to officers' question whether he had picked out any cars he liked or whether he had spoken to anyone about the cars or the auction, Moss replied that he had not.

17.     To the officer's further inquiries about his automotive business, Moss stated that the name of his tow service business was "Auto Cents" and the name of the car

dealership business was "Road Master." Moss later recanted and claimed he was a "part owner" of the businesses with his father. A search in the Georgia Secretary of State database revealed that there was an entity called Auto Cents LLC that had not been registered since 2011 and was administratively dissolved by the Secretary of State in December 2015. Another search in the Georgia Secretary of State database revealed that there is a newly formed entity called Road Master Towing & Recovery LLC that was formed in October 2020, which is 10 months *after* the December 2019 seizure. The database further reflected that the name Road Master Towing & Recovery was reserved by Karlene Sparks for Moss on or about October 23, 2019 but that the name reservation expired on November 22, 2019 and the entity was never formed.

18. When asked how much income he earns, Moss stated that he has never paid income tax and that he did not know how much income he earns monthly or annually.

19. Moss further stated that he planned to purchase vehicles from the auction called "Manahiem" to be held in Anaheim, California on December 3, 2019. The officer asked Moss again how long he planned to stay in Los Angeles, and Moss recanted his original statement and said he intended to leave "right after the auction" on December 3, 2019.

20. The officer called Manheim and learned that it had an auction scheduled for December 4, 2019, not December 3, 2019 as Moss had stated. The Manheim representative stated that neither Moss nor the dealership that Moss claimed to be associated with had registered to attend the December 4, 2019 auction. The representative further stated that to attend and participate in an auction, a car dealership as well as its representative had to be pre-registered with the auction, and that the pre-registration process took a few days. In addition, a hotel in the LAX area that Moss stated he was interested in staying was approximately forty miles from the car auction Moss said he planned to attend.

21. A trained, state-certified narcotic detection canine, "Keisa," conducted a sniff test of the defendant currency in Moss's possession. "Keisa" positively alerted,

which signifies that the defendant currency had recently been in close proximity with narcotics. At the time of the December 2, 2019 positive alert, "Keisa" had received training during which time "Keisa" successfully found training aids which contained actual narcotics. "Keisa" alerts to the scent of narcotics for which he is trained, which are heroin, cocaine, and methamphetamine. In addition, "Keisa" has also been trained with general currency in circulation, in order to make sure that he does not alert to the odor of currency but instead to the presence of narcotics on currency. At the time of the December 2, 2019 positive alert, "Keisa" had been successfully used in cases in which narcotics were found.

22. The currency found in Moss's possession (i.e., the defendant currency) was in miscellaneous denominations that are consistent with narcotic trafficking: 378 one hundred dollar bills, 5 fifty dollar bills, 42 twenty dollar bills, 1 ten dollar bill, and 1 five dollar bill.

23. A law enforcement records check revealed that Moss has a criminal history related to controlled substances. Only six months prior to this seizure, on June 24, 2019, Moss was arrested in West Point, Georgia during a traffic stop. Moss gave false identification to a police officer and a search of the vehicle he was driving revealed a package of marijuana concealed inside the gas cap of the vehicle, over $12,000 in U.S. currency, a Springfield .45 caliber handgun under the driver's seat, and a Draco AK-47 rifle with a magazine and a round chambered concealed under a bag of clothes in the back seat. His true identity of Moss was discovered when he was fingerprinted and that he was driving on a suspended license.

24. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

///

WHEREFORE, plaintiff United States of America prays:

(a)     that due process issue to enforce the forfeiture of the defendant currency;

(b)     that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)     that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d)     for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: November 24,  2020

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

   */s/Katharine Schonbachler*
KATHARINE SCHONBACHLER
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

1

<u>**VERIFICATION**</u>

2

I, Christopher J. Regan, hereby declare that:

3

1.      I am a Task Force Officer with the Drug Enforcement Administration and

4

the case agent for the forfeiture matter entitled <u>United States of America v. $38,905.00 in</u>

5

<u>U.S. Currency</u>.

6

2.      I have read the above Verified Complaint for Forfeiture and know its

7

contents.  It is based upon my own personal knowledge and reports provided to me by

8

other law enforcement agents.

9

3.      Everything contained in the Complaint is true and correct, to the best of my

10

knowledge and belief.

11

I declare under penalty of perjury that the foregoing is true and correct.

12

Executed November 24, 2020 in Los Angeles, California.

13

14

15

CHRISTOPHER J. REGAN

16

17

18

19

20

21

22

23

24

25

26

27

28